UNITED STATES of America,
Appellee,

v.

Percy BRANKER, Appellant.

No. 60, Docket 33517.

United States Court of Appeals
Second Circuit.

Argued Sept. 10, 1969.

Decided Nov. 17, 1969.

Richard Ben-Veniste, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for the Southern District of New York and Elkan Abramowitz, Asst. U. S. Atty., on the brief), for appellee.

Francis W. H. Adams, New York City (George F. Adams, New York City, on the brief), for appellant.

Before LUMBARD, Chief Judge, and SMITH and FEINBERG, Circuit Judges.

LUMBARD, Chief Judge.

Percy Branker appeals from his conviction by a jury of knowingly presenting false claims against the United States in violation of 18 U.S.C. section 287. He was sentenced to six months' imprisonment and probation of two years. The appeal raises two questions: whether the hearsay statements of Grover Cooper, a co-conspirator, were admissible, and whether it was proper to admit in evidence portions of Branker's testimony at a hearing held to establish his indigency after his first trial on the same charges. We find no error and affirm the conviction.

The evidence showed that several employees of the Internal Revenue Service (IRS), among them the government's principal witness, Mrs. Ethel Ivy Neely, and Grover Cooper, defrauded the government by obtaining "refunds" of taxes which had never been paid. The scheme involved processing fraudulent tax returns and seeing to it that they were not audited in accordance with standard IRS procedures; as a result of these actions, refund checks were issued to "taxpayers," of which Branker was one.

Branker did not testify at the trial, but the government introduced his grand jury testimony in which he conceded cashing twelve "refund" checks, shown to total approximately $82,500, at the request of Cooper. His incredible explanation before the grand jury was that Cooper asked him to cash the checks for the IRS so that the IRS would have cash for expenses and that thus he thought he was doing a favor for the federal government. By Branker's admissions to the grand jury, it was established that he gave the proceeds of cashing the checks to Cooper, for which Cooper paid him $200 "a few times" and $50 on one other occasion.

Mrs. Neely testified that she did not know Branker and that she had not met him, but that she had had numerous conversations and dealings with Cooper. In one of these conversations, Cooper told Mrs. Neely

"that he and Branker had worked out a scheme where they would put through fraudulent returns. He wanted me to work along with him. He said that regardless of the amount of money, that Branker could negotiate the cashing of the check, regardless of what the refund would be, and he wanted me to go along with this idea."

She further stated that Cooper told her that Branker lived and filed his legitimate tax returns in Brooklyn and that she checked the records in her office, the Manhattan IRS office, to make sure that Branker had never filed returns there. She further stated that Cooper told her how Branker was able to negotiate the checks and that Cooper showed her where Branker's place of business was. She testified that on the latter occasion Cooper offered to take her into the building and introduce her to Branker, but she declined the invitation.

Mrs. Neely's testimony as to her conversations with Cooper, when combined with Branker's own admissions before the grand jury, provide ample evidence of guilt. However, Branker contends that the Neely testimony was improperly admitted in evidence. This contention is without merit. Once the trial judge found that there was evidence from which it could be concluded that there was a conspiracy of which Cooper and Neely were members, these conversations were properly admitted. Branker was, by his own admissions, linked to Cooper. It was necessary to the operation of the scheme that Cooper tell Mrs. Neely that Branker's returns were fraudulent so that they would receive the special treatment which the members of the conspiracy had agreed upon. Cooper's statements were thus acts in furtherance of the conspiracy. Moreover, they tended to show that Branker had full

380

knowledge that the checks he was cashing were generated by fraudulent returns.

We find nothing in our earlier opinion reversing Branker's 1966 conviction which speaks to the contrary. United States v. Branker, 395 F.2d 881 (2d Cir. 1968). We read what was there said as having to do only with the jury's consideration and possible use of Cooper's statements about Branker against other defendants then on trial. See id. at 888.

Nor does it make any difference that Branker was not being tried on the conspiracy count but only on the substantive counts in his second trial. Mrs. Neely, Cooper, and Branker were shown to be acting together in the scheme to secure refunds with fraudulent returns. Thus, evidence of what they said in order to carry out the scheme was just as relevant and admissible against anyone participating in the scheme on the trial of a substantive count as it would be on the trial of a conspiracy charge. United States v. Rinaldi, 393 F.2d 97, 99 (2d Cir.), cert. denied, 393 U.S. 913, 89 S. Ct. 233, 21 L.Ed.2d 198 (1968); United States v. Granello, 365 F.2d 990, 995 (2d Cir. 1966), cert. denied, 386 U.S. 1019, 87 S.Ct. 1367, 18 L.Ed.2d 458 (1967); United States v. Annunziato, 293 F.2d 373, 378 (2d Cir.), cert. denied, 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 134 (1961); United States v. Pugliese, 153 F.2d 497, 500 (2d Cir. 1945). Judge Cannella's instructions to the jury adequately protected Branker with respect to the jury's consideration of the evidence. There was no objection to these instructions or to the later charge of the court regarding this evidence.

Branker's second contention raises a more important question. At trial, the government introduced in evidence certain testimony which Branker had given at a hearing on his application to proceed *in forma pauperis* and for appointment of counsel in order to appeal from his first conviction. At this hearing, held before Judge Wyatt in June 1966, Branker was represented by counsel who said that Branker was "willing and anxious" to testify about his financial affairs. Branker first testified that he gave Cooper all of the money received from cashing the refund checks. Later in his testimony he admitted that Cooper gave him $200 on one occasion and $50 on another. Before the grand jury, Branker had denied that he had used any of the money from the refund checks which he had deposited in his bank accounts to make payments on his mortgage accounts at several banks. At the trial, the government introduced documentary evidence from which the jury could find that at least some of the proceeds of the checks had been used to make such payments.

Thus, through the use of the transcript of the indigency hearing the government was able to impeach Branker's grand jury testimony, which was also before the jury. Branker now complains that it was reversible error for the court to admit his testimony at the indigency hearing.

■ We are of the view that the government should not be permitted to use as part of its direct case any testimony given by a defendant at a hearing where he is seeking *forma pauperis* relief or the assignment of counsel on the ground of his financial inability to pay court costs, to procure the minutes, or to secure counsel. The defendant should enjoy his constitutional rights to counsel and to appeal and the means of supporting his assertion of these rights by his own testimony without running the risk that thereby he may be incriminating himself with respect to the charges pending against him.[1]

1. We appreciate that different considerations might be relevant in the event the government were to seek to use such testimony upon cross-examination of a defendant who testifies at trial, and we express no opinion on that question. Cf. Walder v. United States, 347 U.S 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954); Proposed Rules of Evidence for the United States District Courts and Magistrates, *supra*, Advisory Committee's Note on Proposed Rule 1–04(d) at 15 (1969). But cf. United States v. Fox, 403 F.2d 97, 101–104 (2d Cir. 1968).

In a somewhat similar situation, the Supreme Court has recently held that testimony given by a defendant at a preliminary hearing in support of a motion to suppress evidence which he alleges was illegally seized may not be used against him at trial. Simmons v. United States, 390 U.S. 377, 389–394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The Judicial Conference Standing Committee on Rules of Practice and Procedure has incorporated this holding in its preliminary draft of the Proposed Rules of Evidence for United States District Courts and Magistrates. Indeed, the Committee has expanded the principle to cover preliminary hearings on the admissibility of confessions. Proposed Rule 1–04(d) is thus worded:

(d) PRELIMINARY HEARINGS ON CONFESSIONS AND EVIDENCE. Preliminary hearings on the admissibility of confessions or statements by the accused or evidence allegedly unlawfully obtained shall be conducted outside the hearing of the jury. The accused does not by testifying at the hearing subject himself to cross-examination as to other issues in the case. Testimony given by him at the hearing is not admissible against him on the issue of guilt at the trial.

The constitutional rights to counsel and to equal protection of the laws in prosecuting an appeal are no less important than the constitutional rights to protection against illegal searches and seizures and coerced confessions. However, Branker did not assert this claim when the evidence was introduced by the government at trial. His counsel only objected generally and on the ground that the parts of Branker's testimony at the indigency hearing offered by the government had "nothing to do with the issue before the court."

█ Under the circumstances we do not think that we should hold that the admission of this evidence was error requiring reversal of Branker's conviction. The government proceeded in good faith

to use evidence which was clearly relevant, and the defense made no objection which alerted the trial judge to the constitutional issue. United States v. Indiviglio, 352 F.2d 276, 279 (2d Cir. 1965) (en banc), cert. denied 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966).

The conviction is affirmed.