Joanne and Arthur **KINOY**, Plaintiffs–Appellees,

v.

John M. **MITCHELL**, individually and as former Attorney General of the United States; Elliot G. Richardson, as Attorney General of the United States; Clyde A. Tolson, as executor of the Estate of J. Edgar Hoover; Clarence Kelley, as Director of the Federal Bureau of Investigation; Whitney North Seymour, individually and as former United States Attorney for the Southern District of New York; John H. Doyle, individually and as former Assistant United States Attorney; "John Doe," individually and as an agent of the Federal Bureau of Investigation; "Richard Roe," individually and as an agent of the Federal Bureau of Investigation; and the United States of America, Defendants–Appellants.

Nos. 857, 859 and 860, Docket 87–6047, 87–6119 and 87–6137.

United States Court of Appeals, Second Circuit.

Argued March 15, 1988.

Decided July 1, 1988.

Rudolph W. Giuliani, U.S. Atty., for the S.D.N.Y. (Randy M. Mastro, Steven E. Obus, of counsel), for defendants-appellants.

Henry F. Furst, Upper Montclair, N.J. (Jeremiah Gutman, Michael Ratner, New York City, of counsel), for plaintiffs-appellees.

Before PRATT and MINER, Circuit Judges, and JOHN M. WALKER, District Judge *.

---

* Honorable John M. Walker, Jr., United States District Judge for the Southern District of New York, sitting by designation.

1. John Doyle, Elliot Richardson, Clarence Kelley, and Paul Curran were previously dismissed as defendants in this action.

Joanne Kinoy, Arthur Kinoy's daughter, was originally a plaintiff in this action. On December 28, 1987, all of Joanne Kinoy's claims against all of the defendants were dismissed with prejudice. *See* Joint Appendix [hereinafter cited as "JA"] at 395–398.

Joanne Kinoy had moved to certify a class consisting of "all those persons who consult and have consulted with plaintiff Arthur Kinoy as their attorney." Amended Complaint at ¶ 4; JA

WALKER, District Judge:

Defendants-appellants John M. Mitchell, Clyde A. Tolson, Whitney North Seymour, John Doe and Richard Roe appeal from the February 4, 1987 order of the United States District Court, Southern District of New York, Ward, J., denying their motion for summary judgment against plaintiff Arthur Kinoy, an attorney. Kinoy seeks money damages for himself for the government's warrantless interceptions of his conversations with clients.[1]

On March 26, 1987, Judge Ward certified his order for purposes of interlocutory appeal, pursuant to 28 U.S.C. § 1292(b).

Appellants assert, *inter alia*, that summary judgment should have been granted in their favor for Kinoy's failure to state a valid constitutional claim. We agree with appellants and reverse.

## Background

Kinoy, a noted civil rights attorney, brought this action nearly two decades ago, alleging that on many occasions between 1949 and 1970, his conversations with clients were electronically intercepted by the government without judicial authorization. The government denies Kinoy was ever the direct target of these admittedly warrantless national security wiretaps,[2] and maintains that the wiretaps were authorized pursuant to "several national security investigations," which concerned both "foreign security" and "domestic security."[3]

at 73. No class was ever certified and Judge Ward, at the February 4, 1987 hearing, indicated that no class would be certified. JA at 27.

2. The government characterizes the interceptions of Kinoy as "incidental." Brief of defendants-appellants at 6. At the February 4, 1987 hearing on Kinoy's motion to amend his complaint and defendants' cross-motion for summary judgment, Judge Ward stated that "[f]rom my review of the materials, it does strike me that [Kinoy] was not the subject of any interception but was intercepted incidentally." JA 23; *See also* JA 25–26.

3. JA at 16; Brief of defendants-appellants at 2.

In 1970 Kinoy brought this action, alleging the government's violation of a long list of his and his clients' constitutional rights. The parties then endured nine years of discovery, during which time the government made available to both Kinoy and Judge Ward telephone logs of the intercepted conversations.

The case lay dormant from 1979 until 1985. During that period, the Supreme Court decided *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), which held that, for warrantless wiretaps prior to 1972, the Attorney General was entitled to qualified immunity in actions by persons alleging that such wiretaps violated their Fourth Amendment rights. The action was revived in 1985, after Kinoy's counsel responded, upon Judge Ward's inquiry, that Kinoy wished to pursue the action.[4] Despite the fact that Kinoy's Fourth Amendment claims were effectively gone from the case, Judge Ward allowed the action to go forward because Kinoy indicated he wished to pursue his claims on Fifth and Sixth Amendment grounds.

Specifically, on February 4, 1987, Judge Ward held a hearing on Kinoy's motion to amend his complaint, previously amended in 1971, and defendants' cross-motion for summary judgment. At the hearing, Kinoy withdrew his motion to amend the complaint.[5]

Commenting on the motion for summary judgment, Judge Ward stated at the hearing that he thought "there is nothing left to this case," and that if he were required to write an opinion, there would be "a dismissal with sanctions under Rule 11 . . . ."[6]

Despite his prediction of the outcome of Kinoy's action in the face of defendants'

motion for summary judgment, Judge Ward denied the motion. At oral argument, Kinoy raised his concern for the first time that the government might have used the intercepts against his clients in some way, perhaps using foreknowledge of Kinoy's trial strategy to fashion the government's own trial strategy. Although Kinoy had not raised the issue in his pleading, and although, when questioned by Judge Ward, he admitted he had no evidence of any use of the intercepts by the government,[7] Kinoy argued that further discovery was necessary to settle the matter. On that basis, Judge Ward denied defendants' motion for summary judgment, allowing the parties a "reasonable period to compel whatever discovery was appropriate."[8]

Defendants now appeal from Judge Ward's denial of summary judgment.

*Discussion*

At the hearing before Judge Ward, defendants argued principally that they enjoyed qualified immunity against Kinoy's Fifth and Sixth Amendment claims. Plaintiffs relied upon *Mitchell v. Forsyth*, 472 U.S. at 530, 105 S.Ct. at 2817, in which the Supreme Court held that the Attorney General possessed qualified immunity against suit for a warrantless wiretap "aimed at gathering intelligence regarding a domestic threat to national security", because the unconstitutionality of the wiretap was not clearly established at the time the tap was authorized. Judge Ward disagreed with defendants, holding that "[w]ith respect to plaintiff's Fifth and Sixth Amendment claims, . . . defendants' actions [are not] covered by qualified immunity."[9] On this appeal, however, we do not need to reach this question.

---

**4.** At the February 4, 1987 hearing, Judge Ward stated, in response to the government's motion for dismissal for failure to prosecute, that "I think if I picked up and sua sponte entered an order just before I saw [Kinoy's counsel in 1985], that would have been appropriate." JA at 22.

**5.** Judge Ward stated that "[i]t seems to me that the proposed amended complaint would be the basis for Rule 11 sanctions." *Id.* at 34.

**6.** *Id.* at 33. Judge Ward further stated that he could "spend considerable time . . . outlining the deficiencies in [Kinoy's] case. They are fatal deficiencies." *Id.* Judge Ward also told Kinoy that "for six different reasons, probably, you are out of court." *Id.* at 29.

**7.** *Id.* at 30.

**8.** *Id.* at 50.

**9.** *Id.* at 65.

At oral argument before this Court, Kinoy conceded that his sole remaining claim is one for damages for the alleged violations of his own rights as an attorney. He asserts that the warrantless interceptions of his conversations with clients violated his rights under the Fifth and Sixth Amendments to the Constitution.

Because we hold that under the Fifth and Sixth Amendments there is not and never has been a recognized constitutional right of an attorney, as distinguished from any right of his client, to communicate with the client free from government intrusion when national security interests are implicated, Kinoy has failed to state a valid constitutional claim, and his action must be dismissed.

In 1971, the Supreme Court held in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389, 91 S.Ct. 1999, 2001, 29 L.Ed.2d 619 (1971), that a violation of a constitutional guarantee "by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct." The following year, in *United States v. United States District Court*, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972), the Supreme Court held that warrantless wiretaps violated the Fourth Amendment in cases involving domestic threats to national security.

A predicate for recovery under *Bivens*, of course, is that the plaintiff possess a constitutional right capable of violation. Kinoy argues that, as an attorney, he had a "clearly established" right, *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), to be free from government intrusion into his conversations with clients. However, during the period of interception, 1949 through 1970, there was no constitutional guarantee that an attorney, independent of any right of his client, might communicate with the client without government interference when national security interests were at stake.

The starting point for any analysis of a constitutional provision is, of course, the text of the provision itself. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." Thus, the Amendment, on its face, secures no right personal to the attorney.

In interpreting the Sixth Amendment, courts have not found a constitutional right of an attorney independent of any right of the client. In none of the cases upon which Kinoy relies was an attorney asserting his right to be free from government interference with client communications, without reference to the vindication of the client's rights. Rather, in every case, either a criminal defendant was asserting a right to communicate confidentially with his attorney, or a court was concerned that interception of attorney-client conversations had deprived a convicted defendant of a fair trial. *See O'Brien v. United States*, 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967) (per curiam); *Schipani v. United States*, 385 U.S. 372, 87 S.Ct. 533, 17 L.Ed. 2d 428 (1966) (per curiam); *Black v. United States*, 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed. 2d 26 (1966) (per curiam) (conviction reversed to ensure fair trial); *United States v. Rosner*, 485 F.2d 1213, 1223–24 (2d Cir. 1973) (defendant asserting rights), *cert. denied*, 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed. 2d 672 (1974); *United States v. Denno*, 221 F.2d 626 (2d Cir.) (defendants asserting rights), *cert. denied*, 349 U.S. 968, 75 S.Ct. 906, 99 L.Ed.2d 1289 (1955); *Caldwell v. United States*, 205 F.2d 879, 881 (D.C.Cir. 1953) (defendant's rights at stake); *Coplon v. United States*, 191 F.2d 749 (D.C.Cir. 1951), *cert. denied*, 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 (1952); *United States v. Orman*, 417 F.Supp. 1126 (D.Col.1976).

Further, Kinoy seeks only damages, having already secured permanent injunctive relief against further unlawful governmental electronic surveillance of him.[10] Thus, this action differs from those in which a plaintiff, basing his claim at least in part on the rights of another—for example, a physician's patient or attorney's client—sought only declaratory and injunctive relief. *See Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (physician

---

10. J.A. at 395–97; Reply brief of defendants-appellants at 2.

sought injunction against enforcement of abortion statute limiting his right to practice); *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) (same); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (physician asserted patient's rights); *In re Investigation Before The April 1975 Grand Jury,* 531 F.2d 600 (D.C.Cir.1976) (per curiam) (attorney asserted his right to practice and clients' right to counsel); *Wounded Knee Legal Defense/Offense Committee v. FBI,* 507 F.2d 1281 (8th Cir.1974) (attorney asserted client's rights); *Keker v. Procunier,* 398 F.Supp. 756 (E.D.Cal.1975); *See also Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).

In sum, Kinoy has failed to state a valid Fifth or Sixth Amendment cause of action. Kinoy, as an attorney, possessed no constitutional right, independent of his clients' rights, to communicate with his clients without government intrusion when national security interests were at stake. Therefore, the denial of defendants' summary judgment motion against Kinoy was error.

The judgment of the District Court denying defendants' motion for summary judgment is reversed, and the case is remanded with a direction to enter judgment in favor of all defendants dismissing the complaint.